DANIEL M. LINDSAY, SBN 142895
PHILLIP MURRAY, SBN 213352
JAMES HARRISON, SBN 194979
JENNIFER RAGAN, SBN 191711
JUSTIN DELACRUZ, SBN 285274
**CALIFORNIA CORRECTIONAL**
**PEACE OFFICERS ASSOCIATION**
**LEGAL DEPARTMENT**
755 Riverpoint Drive, Suite 200
West Sacramento, California 95605-1634
Telephone:  (916) 372-6060
Facsimile:   (916) 340-9372
Phillip.murray@ccpoa.org

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRYAN BLUE, JASON HASTEY, STEVEN OSCHNER, ARTHUR TOVAR, JAMES MCCLOUGHAN, CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION,**<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA OFFICE OF THE INSPECTOR GENERAL; ROBERT A. BARTON, Inspector General, DOES 1-100,**<br><br>Defendants. | No. 2:15-CV-02656-KJM-CKD<br><br>**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**INTRODUCTION**

1.  This case arises from Defendant California Office of the Inspector General's ("OIG") denial of legal representation to Plaintiffs Bryan Blue, Jason Hastey, Steven Oschner, Arthur Tovar, and James McCloughan who were interviewed during an OIG investigation into allegations of excessive force and mistreatment of inmates at High Desert State Prison in Susanville, California.

1

2. OIG selected these Plaintiffs because each had at one time worked as a correctional officer at High Desert State Prison.

3. OIG Deputy Inspectors General represented to CDCR Correctional Officers they interviewed that the interviews were voluntary and told the officers that they could decline to interview at any time. When Plaintiff Bryan Blue took OIG at its word and declined to interview, OIG officials became irate and then sought to compel officers to interview either by enlisting CDCR to issue orders to the officers or by using administrative subpoenas, all the while still telling officers the interviews were voluntary.

4. OIG allowed CDCR Correctional Officers to have representatives present during its interviews until Plaintiff Blue declined to interview. Once Blue declined to voluntarily interview, OIG denied Blue a representative. In all subsequent interviews, including the interviews of Plaintiffs Arthur Tovar, Jason Hastey, Steven Oschner, and James McCloughan, OIG barred representatives from the interviews.

5. California's Public Safety Officer Procedural Bill of Rights Act ("POBRA") codified in California Government Code §3300 et seq. guarantees California peace officers the right to representation during interviews that create a possibility of punitive action. POBRA is applicable to Defendant OIG by way of California Penal Code § 6126.5(d).

6. In December of 2015, Defendant OIG published a report entitled *2015 Special Review: High Desert State Prison Susanville, CA* in which it stated that its investigators had in fact denied representation to Plaintiffs. That report also stated that OIG instigated disciplinary measures within CDCR based upon information learned in its review.

## JURISDICTION AND VENUE

7. CDCR, a named Defendant in Plaintiffs' First Complaint, removed this action from California Superior Court, County of Sacramento pursuant to 28 U.S.C. § 1441(a).

## PARTIES

8. Plaintiff California Correctional Peace Officers Association ("CCPOA") is the exclusively recognized employee organization representing approximately 28,342 state employees

2

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

in Bargaining Unit Six, including, among others, correctional officers employed at Ironwood State Prison, California Correctional Center, Salt Creek Conservation Camp, Washington Ridge Conservation Camp, and High Desert State Prison. CCPOA brings this action on behalf of its members and seeks injunctive and declaratory relief prayed for in this Complaint on behalf of its members who are plaintiffs in this case as well as other members who may be adversely affected by the actions of Defendants described herein.

9. Plaintiff Bryan Blue is a California Correctional Officer employed by CDCR at Ironwood State Prison, an institution operated under CDCR Adult Operations at Blythe, California. Plaintiff Blue is a peace officer described in California Penal Code § 830.5, and as such, Blue is guaranteed the rights set forth in POBRA. Blue is a member of CCPOA.

10. Plaintiff Jason Hastey is a Correctional Sergeant employed by CDCR at California Correctional Center, an institution operated under CDCR Adult Operations at Susanville, California. Hastey is a peace officer described in California Penal Code § 830.5, and as such, Hastey is guaranteed the rights set forth in POBRA. Hastey is a member of CCPOA.

11. Plaintiff Arthur Tovar is a Correctional Officer employed by CDCR at California Correctional Center, an institution operated under CDCR Adult Operations at Susanville, California. Tovar is a peace officer described in California Penal Code § 830.5, and as such, Tovar is guaranteed the rights set forth in POBRA. Tovar is a member of CCPOA.

12. Plaintiff Steven Oschner is a Correctional Officer employed by CDCR at Salt Creek Conservation Camp, a fire camp jointly operated by CDCR Adult Operations and the Department of Forestry and Fire Protection at Paskenta, California. Oschner is a peace officer described in California Penal Code § 830.5, and as such, Oschner is guaranteed the rights set forth in POBRA. Oschner is a member of CCPOA.

13. Plaintiff James McCloughan is a Correctional Officer employed by CDCR at Washington Ridge Conservation Camp, a fire camp jointly operated by CDCR Adult Operations and the Department of Forestry and Fire Protection at Nevada City, California. McCloughan is a

3

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

peace officer described in California Penal Code § 830.5, and as such, Oschner is guaranteed the rights set forth in POBRA. McCloughan is a member of CCPOA.

14. Defendant California Office of the Inspector General is a state agency responsible for contemporaneous public oversight of internal affairs investigations and the disciplinary process of CDCR. The OIG reviews CDCR policies, practices, and procedures at the request of the Governor, the Senate Rules Committee, or the Speaker of the Assembly.

15. Defendant Robert Barton is the duly appointed Inspector General and was so at the time of the allegations set forth herein. He has such powers and duties as are vested in him under the statutes and regulations of the State of California. He is named here in his official capacity only.

## FACTUAL ALLEGATIONS

**Legal Framework**

16. California Penal Code § 6126.5(d) states that when OIG interviews CDCR peace officers in a matter that could lead to punitive action, it must adhere to enumerated provisions of POBRA as if OIG were the employer.

17. One of the enumerated provisions in Penal Code § 6126.5(d) is Government Code § 3303. Government Code § 3303(i) provides that when an interrogation focuses on matters that are likely to result in punitive action against a peace officer, that officer shall have the right to a representative present during the interrogation.

**Specific Allegations of Violation of POBRA Rights**

18. On October 13, 2015, Harman Sufi, a Deputy Inspector General with OIG, interviewed two correctional officers at California State Prison, Los Angeles County ("CSPLAC") in what Sufi described as an authorized review of pattern and practice at High Desert State Prison. The two officers interviewed, Brian J. Rodriguez and Mark Rosales, were permitted to have a representative present during the interviews and were in fact represented by Robert Davis, president of the CCPOA CSPLAC chapter.

19. On October 15, 2015, Deputy Inspector General Michael Maddox interviewed Correctional Officer Bryan Blue at Ironwood State Prison ("ISP") in Blythe, California. Blue

4

reported to the interview with his union representative, CCPOA Staff Legal Counsel Phillip Murray. Murray asked Maddox if the interview was voluntary or compelled. Maddox stated that the interview was voluntary. Based upon Maddox's statement, Blue declined to interview.

20. Shortly after Blue declined to interview, Chief Deputy Inspector General Roy Wesley called ISP Warden Neil McDowell and ordered McDowell to compel Blue's participation in the interview. Warden McDowell then telephoned ISP Correctional Lieutenant Felipe Alvarez and directed Alvarez to order Blue to report back to the interview room and to submit to the interview. Alvarez then went to Blue's post in the ISP Administrative Segregation Unit and escorted Blue back to the Warden's Conference Room in the ISP Administration Building. Alvarez waited with Blue until Maddox returned to interview Blue. When Maddox arrived to interview Blue, Murray met him in a hallway outside the conference room. Maddox informed Murray that he would interview Blue but Murray would be excluded and Blue would not be permitted to have a representative. Maddox told Murray that his superiors had directed him "to keep the union attorney out of the room." Maddox then interviewed Blue without a representative despite Blue's request for a representative made at the beginning of the interview.

21. When Maddox finished interviewing Blue, Murray and Terry Hammon, President of the ISP CCPOA Chapter, approached Maddox. Murray asked Maddox who had given the order to "keep the union attorney out of the room," and Maddox stated the order had come from Chief Deputy Inspector General Roy Wesley.

22. On October 29, 2015, Maddox interviewed Correctional Officer Arthur Tovar and Correctional Sergeant Jason Hastey at California Correctional Center ("CCC"). Before the interviews, Casey Granfield, President of the CCPOA CCC Chapter, asked Maddox if the interviews were voluntary. Maddox stated that the interviews were voluntary but if either officer refused to interview, Maddox would give them both administrative subpoenas compelling them to immediately interview. Maddox told Granfield "either way, it works out the same." Granfield then stated he would be representing Tovar. Maddox told Granfield that neither officer would be permitted a representative.

23. Tovar reported for his interview with Maddox and requested a representative. Maddox told Tovar that he would not be permitted a representative and that he could not record the interview. Tovar asked whether the interview was voluntary, and Maddox told him that it was voluntary but if Tovar declined to interview he would be given an administrative subpoena commanding his immediate participation. Tovar then read a statement from a preprinted advisement card stating to the effect that he was being denied a representative and was answering questions only because he was ordered to do so and that such answers were not to be deemed a waiver of his statutory or constitutional rights. Tovar then interviewed with Maddox without a representative.

24. On October 29, 2015, Correctional Sergeant Jason Hastey reported for his interview with Maddox. Maddox informed Hastey that OIG was conducting an authorized review of certain issues at High Desert State Prison. Hastey asked Maddox if Maddox had a subpoena, and Maddox turned off his recording device and gave Hastey an administrative subpoena. Hastey then requested a representative. Maddox told Hastey he would not be allowed a representative. Hastey expressed to Maddox his concerns about the interview and the potential consequences, specifically telling Maddox that he had received no notice of the interview or its subject matter and thus had little, if any, time to prepare. Hastey further stated that he was concerned that answers he provided could later become the basis of disciplinary action by CDCR and possibly criminal prosecution. Hastey again demanded a representative, and Maddox again denied his request. Maddox stated that he was conducting a review and because of this distinction, Hastey was not entitled to a representative. Hastey argued that he did not understand Maddox's distinction between a review and an interview as they were one in the same in Hastey's mind. Hastey stated that he believed his rights under POBRA and the Constitution were being violated. Maddox interviewed Hastey without a representative. When Maddox finished his interview, Hastey reiterated that he was entitled to a representative and again stated his concerns about the lack of notice and the potential for punitive action and/or criminal prosecution. Maddox responded by saying: "I am just doing what I am told

6

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

to do." Hastey asked to be provided a copy of the recording Maddox had made of the interview, but Maddox denied the request.

25. On October 30, 2015, Maddox interviewed Correctional Officer Steven Oschner at Salt Creek Conservation Camp ("SCCC") in Paskenta, California. Oschner and his union representatives, CCPOA Staff Legal Counsels Phillip Murray and Justin Delacruz met Maddox in an office in the SCCC Administration Building. Maddox told Murray that Oschner would not be permitted a representative. Murray asked Maddox if the interview was voluntary, and Maddox stated that the interview was voluntary but if Oschner declined, he would give Oschner an administrative subpoena demanding immediate compliance. Oschner declined to interview, and Maddox gave Oschner an administrative subpoena. Murray protested that Oschner was being denied a representative and argued that Penal Code § 6126.5 and Government Code § 3303 entitled Oschner to a representative. Maddox stated that Oschner could not have a representative during the interview, demurring to orders he had received from his superiors. Murray told Maddox "your bosses are instructing you to break the law." Oschner requested to record the interview, and Maddox denied Oschner's request. Maddox then interviewed Oschner without a representative. At the beginning of the interview, Oschner again requested a representative and stated that he feared the possibility of punitive action. Maddox again denied the request for representation. Oschner then read a statement from a preprinted advisement card. That statement stated that Oschner was answering questions under compulsion and was not waiving any statutory or constitutional rights. Maddox then continued the interview despite Oschner's several requests for a representative.

26. On November 2, 2015, Maddox interviewed Correctional Officer James McCloughan at Washington Ridge Conservation Camp ("WRCC") in Nevada City, California. McCloughan was accompanied by an attorney, Douglas Foley. Foley asked Maddox if the interview was voluntary, and Maddox stated that the interview was voluntary, but if McCloughan declined to interview, Maddox would serve him an administrative subpoena to immediately interview. Foley informed Maddox that he had been retained by CCPOA to represent McCloughan and demanded to be present during the interview. Maddox telephoned his office. After a brief

7

conversation, Maddox then informed Foley that OIG deemed him "no different than a CCPOA attorney" and denied his demand to represent McCloughan. Maddox then interviewed McCloughan without a representative.

27. On November 4, 2015, OIG Chief Counsel James Casey Spurling took the deposition of retired High Desert State Prison Correctional Officer Michael Jones pursuant to an administrative subpoena issued on or about October 19, 2015. This deposition was part of the same review involving Plaintiffs Blue, Tovar, Hastey, Oschner, and McCloughan. Spurling allowed Jones's legal representatives CCPOA Staff Legal Counsels Phillip Murray and Justin Delacruz to be present during the deposition.

28. In December of 2015, Defendant OIG published a report of its review of High Desert State Prison entitled *2015 Special Review: High Desert State Prison Susanville, CA* in which Defendant OIG reported: "The OIG learned of several allegations of misconduct involving HDSP staff and urged both HDSP and CDCR's Office of Internal Affairs to take action." The report further cited examples of misconduct at HDSP that "the HDSP hiring authority did not refer for investigation, and would not have been investigated, but for this review." The statement shows that Defendant OIG does initiate disciplinary proceedings and thus the Plaintiff officers had a reasonable basis to be fearful that they were at risk of punitive action.

**FIRST CAUSE OF ACTION**
(Injunctive Relief for Violation of POBRA, California Government Code §§ 3300, et seq. and California Penal Code § 6126.5(d) by Plaintiffs Bryan Blue, Jason Hastey, Steven Oschner, Arthur Tovar, and James McCloughan against all Defendants)

29. Plaintiffs hereby incorporate by reference paragraphs 1 through 28 as if fully set forth herein.

30. Pursuant to California Penal Code § 6126.5(d), Plaintiffs are entitled to the right to representation granted to them by Government Code § 3303 whenever the OIG interviews CDCR employees in a matter that could lead to punitive action. The determination as to when a matter could lead to punitive action is for the CDCR employee to make. Defendants, their agents, servants, employees, and each of them determined that no punitive action could result from interviews and

8

disregarded the reasonable fears and concerns of Plaintiffs Bryan Blue, Jason Hastey, Steven Oschner, Arthur Tovar, and James McCloughan that answers they provided had the potential to result in punitive action or criminal liability. By disregarding Plaintiffs Bryan Blue, Jason Hastey, Steven Oschner, Arthur Tovar, and James McCloughan's concerns, Defendants, their agents, servants, and employees circumvented Plaintiffs' POBRA rights.

31. Plaintiff Bryan Blue was ordered by CDCR to participate in an interview with OIG without any written or oral notice of the subject matter. Chief Deputy Inspector General Roy Wesley instructed Deputy Inspector General Michael Maddox to deny Plaintiff Blue the right to representation guaranteed by California Penal Code § 6126.5(d) and California Government Code § 3303(i). Maddox did not provide Plaintiff Blue any admonishment shielding his answers from use in a criminal action. Despite his request for a representative, Maddox denied Plaintiff Blue his right to representation.

32. Plaintiff Arthur Tovar was compelled to participate in an interview with OIG without any written or oral notice of the subject matter based upon an administrative subpoena issued to him moments before his interview. Deputy Inspector General Maddox presented Plaintiff Tovar with an administrative subpoena purporting to demand immediate compliance. Maddox denied Plaintiff Tovar's right to representation guaranteed by California Penal Code § 6126.5(d) and California Government Code § 3303(i). Maddox did not provide Plaintiff Tovar any admonishment shielding his answers from use in a criminal action. Maddox denied Plaintiff Tovar's repeated requests for a representative.

33. Plaintiff Jason Hastey was compelled to participate in an interview with OIG without any written or oral notice of the subject matter based upon a subpoena issued to him moments before his interview. Deputy Inspector General Maddox presented Hastey with an administrative subpoena purporting to demand immediate compliance. Maddox denied Plaintiff Hastey the right to representation guaranteed by California Penal Code § 6126.5(d) and California Government Code § 3303(i) despite his statements that he believed answers provided could result in punitive action or criminal liability. Maddox did not provide Plaintiff Hastey any admonishment

9

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

shielding his answers from use in a criminal action. Maddox denied Plaintiff Hastey's repeated requests for a representative.

34. Plaintiff Steven Oschner was compelled to participate in an interview with OIG without any written or oral notice of the subject matter based upon a subpoena issued to him moments before his interview. Deputy Inspector General Maddox presented Plaintiff Oschner with an administrative subpoena purporting to demand immediate compliance. Maddox denied Plaintiff Oschner the right to representation guaranteed by Penal Code § 6126.5(d) and Government Code § 3303(i), stating that instruction had come from his superiors. Maddox did not provide Plaintiff Oschner any admonishment shielding his answers from use in a criminal action. Maddox denied Plaintiff Oschner's repeated requests for a representative.

35. Plaintiff James McCloughan was compelled to participate in an interview with OIG without any written or oral notice of the subject matter based upon a subpoena issued to him moments before his interview. Deputy Inspector General Maddox presented Plaintiff McCloughan with an administrative subpoena purporting to demand immediate compliance. Maddox denied Plaintiff McCloughan the right to representation guaranteed by California Penal Code § 6126.5(d) and California Government Code § 3303(i). Maddox did not provide Plaintiff McCloughan any admonishment shielding his answers from use in a criminal action. Maddox denied Plaintiff McCloughan's request for a representative.

36. Government Code § 3309.5 entitles Plaintiffs Blue, Tovar, Hastey, Oschner and McCloughan to injunctive relief for Defendants' violation of their POBRA rights. As such, these Plaintiffs seek an order enjoining Defendants from initiating any punitive action against these Plaintiffs based on their improperly compelled interviews.

## SECOND CAUSE OF ACTION

**(Declaratory Relief re: Penal Code § 6126.5 and POBRA by Plaintiff CCPOA against all Defendants)**

37. Plaintiff CCPOA hereby incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

10

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

38. An actual controversy has arisen and now exists between Plaintiff CCPOA and Defendants concerning their respective rights and duties under Penal Code § 6126.5 and POBRA. Penal Code § 6126.5 incorporates the protections of POBRA and provides that "whenever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation." Plaintiff CCPOA contends its members are entitled to representatives whenever the officer reasonably determines that an interview could lead to punitive action. On the contrary, Defendants contend that they may make the determination as to whether an interview is likely to result in punitive action.

39. Plaintiff CCPOA desires a judicial determination and declaration of its members' rights and Defendants' duties under Penal Code § 6126.5 and POBRA, of the question whether Defendants' violated these statutes in conducting Defendant OIG's review.

40. A judicial declaration is necessary and appropriate at this time so that Plaintiff CCPOA may ascertain its members' rights when Defendant OIG conducts interviews.

### THIRD CAUSE OF ACTION
**(Injunctive Relief for Violation of Penal Code §§ 6127.3 and 6127.4 by Plaintiffs Arthur Tovar, Jason Hastey, Steven Oschner and James McCloughan Against all Defendants)**

41. Plaintiffs hereby incorporate by reference paragraphs 1 through 40 as if fully set forth herein.

42. An administrative subpoena is an investigative tool used by administrative agencies when no legal action is pending. Defendant OIG's use and administration of administrative subpoenas is governed California Penal Code §§ 6127.3 and 6127.4, which provide that the person to be interviewed be given "due notice" of the time and place of the interview.

43. On October 29, 2015, Deputy Inspector General Maddox presented Plaintiff Arthur Tovar with an administrative subpoena purporting to command Tovar to immediately submit to an interview with Maddox. The administrative subpoena did not specify the subject

11

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

matter of the interview and was indefinite as to the inquiry. Maddox did not allow Plaintiff Tovar to consult legal counsel to determine if the subpoena was regularly issued and valid.

44. On October 29, 2015, Deputy Inspector General Maddox presented Plaintiff Jason Hastey with an administrative subpoena purporting to command Hastey to immediately submit to an interview with Maddox. The administrative subpoena did not specify the subject matter of the interview and was indefinite as to the inquiry. Maddox did not allow Plaintiff Hastey to consult legal counsel to determine if the subpoena was regularly issued and valid.

45. On October 30, 2015, Deputy Inspector General Maddox presented Plaintiff Steven Oschner with an administrative subpoena purporting to command Oschner to immediately submit to an interview with Maddox. The administrative subpoena did not specify the subject matter of the interview and was indefinite as to the inquiry.

46. On November 2, 2015, Deputy Inspector General Maddox presented Plaintiff James McCloughan with an administrative subpoena purporting to command McCloughan to immediately submit to an interview with Maddox. The administrative subpoena did not specify the subject matter of the interview and was indefinite as to the inquiry.

47. Plaintiffs Tovar, Hastey, Oschner, and McCloughan allege that Defendant Barton and Chief Deputy Inspector General Roy Wesley authorized the use of deficient administrative subpoenas threatening immediate civil contempt which were then presented upon Plaintiffs named in this paragraph by Deputy Inspector General Maddox. Maddox then misrepresented the validity of the administrative subpoenas to compel immediate obedience to the subpoenas by stating that noncompliance would lead to immediate civil contempt.

48. Plaintiffs Tovar, Hastey Oschner, and McCloughan are without a plain, speedy and adequate remedy in the ordinary course of law to compel Defendants to comply with the legal requirements pursuant to Penal Code §§ 6127.3 and 6127.4.

49. Plaintiffs Tovar, Hastey, Oschner and McCloughan have suffered and will continue to suffer irreparable harm unless and until this Court enjoins Defendants from their continued illegal conduct.

### FOURTH CAUSE OF ACTION

**(Declaratory Relief re: Penal Code §§ 6127.3 and 6127.4 by Plaintiff CCPOA Against all Defendants)**

50. Plaintiff CCPOA hereby incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51. An actual controversy has arisen and now exists between Plaintiff CCPOA and Defendants concerning their respective rights and duties under Penal Code §§ 6127.3 and 6127.4. Penal Code § 6127.4 provides that an administrative subpoena has been served with "due notice of the time and place of attendance of the person" having been given. Plaintiff CCPOA contends "due notice" means the time restraints presented under the California Code of Civil Procedure. On the contrary, Defendants contend that they may compel immediate compliance with an administrative subpoena by simply handing the document to person to be interviewed.

52. Plaintiff CCPOA desires a judicial determination and declaration of its members' rights and Defendants' duties under Penal Code §§ 6127.3 and 6127.4, of the question whether Defendants violated these statutes in conducting Defendant OIG's review.

53. A judicial declaration is necessary and appropriate at this time so that Plaintiff CCPOA may ascertain its members' rights when Defendant OIG issues administrative subpoenas.

### LEAVE TO AMEND

54. Plaintiffs respectfully request leave to amend this Complaint as other facts become known.

### PRAYER

Plaintiffs pray that judgment be entered against Defendants, and each of them, as follows:

1. For an order requiring Defendants Office of the Inspector General and Robert Barton to show why they should not be enjoined as hereinafter set forth during the pendency of this action:

2. For a Preliminary Injunction and a Permanent Injunction Injunction Enjoining Defendants, their agents, servants, and employees and all persons acting in concert with them or for them from:

   a. Denying employees represented by CCPOA in the present and in the future representation guaranteed by Penal Code § 6126.5(d) and Government Code § 3303(i);

   b. Interviewing or interrogating any member of Bargaining Unit Six under penalty or threat of insubordination or civil contempt without affording the right to adequate notice to consult with a union representative or legal counsel and to have a union representative or legal counsel present upon the request of the Bargaining Unit Six member or denied the opportunity to seek judicial relief and/or advisement on any subpoena;

   c. Making any statements, written or oral, intended to chill or have the effect of chilling Plaintiffs' and CCPOA members' exercise of their constitutional and statutory rights to representation;

   d. Threatening or coercing or retaliating or taking any punitive action against Plaintiffs for exercise of their statutory rights to representation.

3. An order excluding any statements or answers made by Plaintiff Blue, Hastey, Oschner, Tovar, and McCloughan in their respective interviews from use by Defendant OIG and/or CDCR;

4. A declaration that Defendant OIG must comply with POBRA in any interview in which a Bargaining Unit Six member has a reasonable belief that punitive action or criminal prosecution could result because of answers or information provided;

5. A declaration that the administrative subpoenas issued pursuant to Penal Code §§ 6127.3 and 6127.4 be issued with sufficient clarity to inform Bargaining Six Unit members the nature of the investigation and issued with sufficient prior notice;

6. Attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5;

14

Plaintiffs' First Amended Complaint
Blue, et al. v. California Office of the Inspector General, et al.; Case No. 2:15-cv-02656

7. Costs of suit incurred herein; and

8. Such and further relief as the Court deems just and proper.

Respectfully submitted,

**CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION LEGAL DEPARTMENT**

Dated: 1-12, 2016            By: _____
                                  Phillip Murray, Staff Legal Counsel